
FILED
2015 Nov-19  PM 01:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| TERESA DE JESUS ZAVALA DE RIVERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:15-cv-00110-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion

## I.   Introduction

The plaintiff, Theresa De Jesus Zavala De Rivera, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. De Rivera timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. De Rivera was fifty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a grade school education. (Tr. at 66.) Her past work experiences include employment as a house cleaner, dishwasher, and floor cleaner. (Tr. at 64–66, 73, 165, 181.) Ms. De Rivera claims that she

became disabled on December 3, 2008, due to fibromyalgia, arthritis, hypertension, depression, right arm pain, knee pain, shoulder and back pain, fat in liver, high blood pressure, high cholesterol, and calcium deficiency in bones. (Tr. at 66, 68–69, 180.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled.  *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the plaintiff can perform other work, the evaluator will find him not disabled.  *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. De Rivera meets the nondisability requirements for a period of disability and DIB and was insured through June 30, 2009. (Tr. at 32.) He further determined that Ms. De Rivera had not engaged in SGA in the time between the alleged onset of her disability and the date last insured. (*Id.*) According to the ALJ, Ms. De Rivera's impairment status following right shoulder arthroscopic rotator cuff repair with residual pain and range of motion limitations was considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 33.) The ALJ found that several of

Ms. De Rivera's claims lacked sufficient evidentiary support, and he determined that she has the following residual functional capacity: the ability to perform light work as defined in 20 C.F.R. 404.1567(b) except that she was precluded from climbing ladders and crawling; she was limited to no more than occasional overhead reaching and lifting with the right upper extremity; she was precluded from working around unprotected heights or hazardous machinery; and she was limited to jobs that do not require the ability to read or speak the English language. (Tr. at 34.) The ALJ also found that Ms. De Rivera's subjective complaints of pain were not entirely credible. (Tr. at 36.)

According to the ALJ, Ms. De Rivera was able to perform her past relevant work through the date last insured. (Tr. at 37.) In making that determination, the ALJ enlisted a vocational expert ("VE") who testified that, when comparing Ms. De Rivera's residual functional capacity with the physical and mental demands of her past work as a hotel housekeeper, she was able to perform that work as actually and generally performed. (Tr. at 37–38.) The ALJ concluded his findings by stating that Ms. De Rivera "was not under a 'disability,' as defined in the Social Security Act, at any time from December 3, 2008, the alleged onset date, through June 30, 2009, the date last insured." (Tr. at 38.)

## II.  STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. De Rivera alleges that the ALJ's decision should be reversed and remanded because she believes that the ALJ improperly applied the pain standard by relying on opinion evidence over objective evidence and by rejecting Ms. De Rivera's testimony that her pain was disabling. Ms. De Rivera also contends that the ALJ's application of the pain standard is not supported by substantial evidence. (Doc. 8 at Page 3.)

Ms. De Rivera asserts that the ALJ's evaluation of her subjective complaints of pain was improper. Specifically, Ms. De Rivera alleges that "the ALJ's decision that her pain is not disabling does not apply the appropriate standard and is not

supported by substantial evidence." (Doc. 8 at Page 6.) Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*,

395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* (quoting *Foote*, 67 F.3d at 1562).

In this case, the ALJ found that Ms. De Rivera met the first prong of the Eleventh Circuit's pain standard, but he did not believe that the evidence confirmed the severity of the alleged pain arising from that condition or that any impairment of such severity could reasonably be expected to give rise to the disabling pain and other limitations alleged by Ms. De Rivera. (Tr. at 37.) The ALJ noted Ms. De Rivera's allegations of pain in her right shoulder, and the record confirms that she had an on-the-job injury to her right shoulder and hip in August 2008. (Tr. at 35.) After conservative treatment failed to relieve the pain, a November 2008 MRI showed a right rotator cuff tear which led to Ms. De Rivera being placed on limited duty and to her undergoing a right arthroscopic rotator cuff repair, subacromial decompression, and AC joint resection in January of 2009. (*Id.*) A follow-up note two weeks after surgery by Dr. William C. Standeffer, Jr., Ms. De Rivera's treating physician, indicated "slow progress" and continuing issues with range of motion and weakness in her rotator cuff. (Tr. at 397–99, 410–12.) In April

2009, Ms. De Rivera underwent a closed manipulation of the right shoulder. (Tr. at 413.) Dr. Standeffer indicated that the surgery was successful and that this was the best that could be done under the circumstances. (*Id.*) In a June 2009 follow-up visit, Dr. Standeffer noted that an MRI showed no evidence that the rotator cuff had failed to heal properly, and Ms. De Rivera had reached maximum medical improvement. (Tr. at 402, 406–07.)

In September 2009, after her date last insured, Ms. De Rivera went to Dr. Jeffrey C. Davis about her shoulder. (Tr. at 277–78.) At that visit, Ms. De Rivera showed significant limitation in her range of motion with her right shoulder and pain with weakness on abduction. (Tr. at 278.) As a result, in October 2009, Dr. Davis performed a right shoulder manipulation, right shoulder arthroscopy with capsular releases, removal of large bony fragment in the right anterior shoulder, and removal of foreign material structure from the right subacromial space on Ms. De Rivera. (Tr. at 274–75.) In post-operative visits over the following months, Dr. Davis noted that Ms. De Rivera was doing well but that she still had work limitations as she recovered from surgery. (Tr. at 273–74.) In January 2010, x-rays showed adequate repair of the shoulder, which led Dr. Davis to recommend full duty status following that visit. (Tr. at 271.)

Ms. De Rivera contends that because these physicians were retained to treat only her work-related injury, they did not properly consider her subjective complaints of pain when making assessments regarding her condition. (Doc. 8 at Page 8.) It is the responsibility of the ALJ, not the doctors, to consider Ms. De Rivera's full condition. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2011). The evidence shows, however, that both physicians did give attention to Ms. De Rivera's entire medical condition. (Tr. at 269–77, 288–89, 395, 399, 401, 410–12.) Here, the ALJ considered the medical records and treatment notes from Ms. De Rivera's treating physicians and gave them great weight. (Tr. at 35–37.) Neither doctor ever stated a belief that she was disabled. (Tr. at 36.) While the ALJ noted that Ms. De Rivera may have continuing shoulder pain and symptoms, it appears that he fully accounted for those symptoms and factored them into the RFC assessment. (Tr. at 37.) The opinions of both treating physicians provide the substantial evidence required to support the ALJ's credibility determination and RFC rating. (Tr. at 36–37.)

Ms. De Rivera also contends that the ALJ mischaracterized her reports about daily activities when making his credibility determination. (Doc. 8 at Page 13–14.) She reported no issues with personal care, she prepared complete meals with several courses on a daily basis, she did laundry and other household chores with

her daughter's help, she drove when necessary, she went out alone, and she shopped. (Tr. at 203–09.) The evidence shows that the ALJ properly relied upon these statements from the Function Report submitted by Ms. De Rivera when making his decision. (Tr. at 35.) There is no evidence that the ALJ did not also consider the limitations outlined by Ms. De Rivera in that same report. As such, it appears that the ALJ did not mischaracterize Ms. De Rivera's activities.

Next, Ms. De Rivera contends that the ALJ should have considered her physical therapist's notes when making a decision about the credibility of her subjective complaints and the consistency and severity of her pain. (Doc. 8 at Page 16–17.) Even if Ms. De Rivera is correct that the physical therapy relates back to treatment before her date last insured and that the records cited go to her progress and ability to work as a result of the injury, there is no indication that the ALJ would have altered his decision based on the physical therapist's notes. In fact, the notes are consistent with the objective medical evidence. While they show that Ms. De Rivera continued going to physical therapy until early 2010, many of the records indicate that she was improving from one visit to the next. Ms. De Rivera often reports feeling good or better than the visit before and only having minor soreness. (Tr. at 321–22, 324–28, 330–31, 335.) The physical therapist does note that Ms. De Rivera is having some trouble reaching overhead and lifting her arm, but these

statements are consistent with the ALJ's findings that Ms. De Rivera still had some limitations, but that these limitations did not render her permanently disabled. (Tr. at 33–34.) Even if the physical therapist's notes should have been considered in this case, they appear to support the ALJ's findings. Thus, any error that the ALJ may have made in failing to consider the physical therapist's notes is harmless.

Finally, Ms. De Rivera contends that the ALJ improperly rejected her testimony based on the fact that she never sought treatment for her right shoulder after her last visit to Dr. Davis. (Doc. 8 at Page 17.) All of the medical records cited by Ms. De Rivera in support of this claim show that, while she complained of joint pain and shoulder pain at subsequent visits to various physicians, there was never a specific complaint regarding her right shoulder. This evidence therefore also supports the ALJ's finding that Ms. De Rivera had no significant complaints of right shoulder pain after her last visit to Dr. Davis. (Tr. at 36.)

Thus, the ALJ properly applied the Eleventh Circuit pain standard as he specifically addressed Ms. De Rivera's allegations of pain in his opinion and provided explicit and adequate reasons for rejecting her testimony. The objective medical and other evidence supports the ALJ's conclusion that Ms. De Rivera's condition did not cause disabling limitations and instead shows that she could perform a reduced range of light work. (Tr. at 37–38.)

## IV. CONCLUSION

Upon review of the administrative record, and considering all of Ms. De Rivera's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON NOVEMBER 19, 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

182184